NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK SUSSINO, VIVIANNE SUSSINO, | : |
| | :     **Civil Action No. 09-6278 (SRC)** |
| Plaintiffs, | : |
| | :     **OPINION** |
| v. | : |
| | : |
| NEW JERSEY DIVISION OF STATE POLICE, et al., | : |
| | : |
| Defendants. | : |

**CHESLER**, District Judge

This matter comes before the Court upon the motion by Defendants New Jersey Division of State Police ("State"), Trooper Michael Kenyon ("Trooper Kenyon"), and Trooper Kevin Hogan ("Trooper Hogan") (collectively "Defendants") for summary judgment [docket entry 63]. Plaintiffs have opposed the motion. The Court has considered the parties' submissions and, pursuant to Federal Rule of Civil Procedure 78, has opted to rule without oral argument. For the reasons discussed below, this Court grants Defendants' motion in part and denies it in part.

I.     **FACTUAL BACKGROUND**

This case arises from a roadside dispute between Mark Sussino ("Plaintiff") and Troopers Kenyon and Hogan on December 13, 2007, that concluded with Plaintiff's arrest. Many years prior to his arrest, Plaintiff suffered a catastrophic occupational injury in which his left hand was completely severed from his arm and later reattached by doctors. Despite a multitude of medical

interventions, Plaintiff continued to suffer from pain, and his left hand and thumb were permanently disabled. Plaintiff alleges that Troopers Kenyon and Hogan used excessive force in arresting him by failing to heed repeated warnings that Plaintiff's left hand was badly injured. Specifically, Plaintiff alleges that after hearing that Plaintiff had an injured hand, Trooper Kenyon deliberately grabbed and twisted it so as to cause Plaintiff to suffer intense pain and permanent injury. Plaintiff also alleges that the troopers applied his handcuffs too tightly, causing Plaintiff pain and discomfort.

Plaintiff, the owner and operator of a tow truck company, and two employees, John Bizarro and Matt Proietto, responded to a dispatch request to aid a commercial "box truck" that had run off the road in icy conditions. The first person to arrive at the scene was Bizarro. Plaintiff then responded to Bizarro's phone call for assistance, arriving with Proietto. As Trooper Kenyon arrived on the scene immediately thereafter, he says he observed portions of Plaintiff's truck extending into the travel portion of the highway. Trooper Kenyon also says he observed Bizarro standing in the travel portion of the highway with traffic moving by at a high speed. Plaintiff denies Trooper Kenyon's account and alleges that both Plaintiff's truck and Bizarro were properly stationed on the shoulder of the highway.

All parties agree that Trooper Kenyon exited his car with his voice raised and immediately took hold of Bizarro and escorted him away from the road. At this stage, however, the parties' versions of events diverge further. Plaintiff alleges that he approached Trooper Kenyon to see what the problem was and Trooper Kenyon struck him twice in the chest with an open palm. According to Trooper Kenyon, Plaintiff refused to provide proper identification, and Trooper Kenyon only placed his hand on Plaintiff's chest in the form of a "stay" motion to keep

2

Plaintiff from returning to his car.

The parties agree that Plaintiff then returned to sit inside his truck. Trooper Kenyon also returned to his vehicle in order to radio for backup. Before Trooper Kenyon could radio for backup, Trooper Hogan arrived at the scene while on routine patrol.

Trooper Kenyon then approached Plaintiff, still seated in the driver's seat of his tow truck, and again demanded Plaintiff's license, registration, and insurance card. According to Plaintiff, Trooper Kenyon hit him in the chest again with an open palm. By all accounts, Plaintiff repeatedly refused Trooper Kenyon's demands. According to Trooper Kenyon, during the course of the back-and-forth, he placed his hand on Plaintiff's chest and leaned across Plaintiff's body into the interior of the truck, assuring himself that there was nothing inside the cab that could be used as a weapon.

Plaintiff and Trooper Kenyon continued to argue over Plaintiff's refusal to provide his license and registration. Trooper Kenyon then informed Plaintiff that if he did not produce the documents, he was going to be arrested. Plaintiff persisted in refusing to produce the requested documentation. Trooper Kenyon then informed Plaintiff that he was under arrest and instructed him to step out of the vehicle. According to Trooper Kenyon, Plaintiff responded by gripping the steering wheel tightly. Plaintiff disputes that, but both parties agree that Plaintiff leaned away from the troopers and shifted his body weight toward the center console of the truck.

According to Plaintiff, prior to his removal from the truck, Bizarro and Proietto repeatedly shouted out warnings to Troopers Kenyon and Hogan that Plaintiff had an injured left hand and/or thumb. Trooper Hogan says that before Plaintiff was extracted from his vehicle, Plaintiff told the troopers that he had a surgically replaced hand. Plaintiff alleges that Trooper

3

Kenyon heard the warnings from Bizarro and Proietto and responded by intentionally grabbing and twisting Plaintiff's injured left thumb in order to remove him from the vehicle.  Defendants dispute this.  According to Trooper Kenyon, no one informed the troopers about Plaintiff's injury until after Plaintiff was removed from his vehicle.  Trooper Kenyon further contends that, in removing Plaintiff from his vehicle, Trooper Kenyon only grabbed Plaintiff's *right* hand or wrist.  A portion of Trooper Hogan's deposition testimony seems to indicate that it was he – not Trooper Kenyon – who grabbed Plaintiff's left hand in order to remove him from the vehicle.[1]

Plaintiff also alleges that his hands were handcuffed too tightly behind his back, causing his injured left hand discomfort.  According to Plaintiff, a police sergeant on the scene ordered Trooper Kenyon to loosen the handcuffs and re-cuff his hands.  Plaintiff maintains that Trooper Kenyon re-cuffed Plaintiff's hands in front of him and was again ordered by the sergeant on duty that the handcuffs were too tight.  According to Trooper Hogan, he was the one who handcuffed Plaintiff initially, and it was Trooper Kenyon who re-cuffed Plaintiff's hands after Plaintiff complained of pain.

Plaintiff and his wife filed the within action alleging a host of claims against Troopers Kenyon and Hogan personally and the New Jersey Division of State Police under a theory of respondeat superior.  Defendants moved for summary judgment as to most claims.

---

[1] Although Trooper Kenyon's vehicle was outfitted with a Mobile Video Recorder ("MVR") that was pointed directly at the front of Plaintiff's truck, the video proved to be of little use to the Court.  First, although the MVR activated automatically when Trooper Kenyon turned on his overhead lights to initially respond at the scene, Trooper Kenyon turned the MVR off and failed to reactivate it until well into the dispute between the parties.  Second, and more importantly, the low quality of the audio and video, as well as the poor weather conditions, made it impossible for the Court to confidently rely on the recording to settle factual disputes between the parties.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also

Fed.R.Civ.P. 569(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).  If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

### B.    Analysis

The Court begins by noting that although the Complaint seeks relief under eight separate state and federal causes of action, Plaintiffs have, by way of their opposition brief, voluntarily dismissed their claims for negligent training and supervision, false arrest, pain and suffering under the Tort Claims Act, intentional infliction of emotional distress, and Plaintiff Vivianne Sussino's *per quod* claims.[2]  Accordingly, it is the Court's understanding that Mark Sussino is the lone remaining Plaintiff in this case, and that he continues to pursue 1) claims against the

---

[2]  Defendants have stated in their moving papers that "both plaintiffs, by way of informal stipulation, have abandoned their economic loss claims." (Defs.' Br. at 10)  Although Plaintiff's opposition papers are silent on this question, the Court is unwilling at this point to treat Plaintiff's silence as acquiescence and invites Plaintiff to submit papers confirming or denying Defendants' representations as to compensatory damages.

6

State and Troopers Kenyon and Hogan individually under 42 U.S.C. § 1983; 2) claims against the State and Troopers Kenyon and Hogan individually under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. §§ 59:1-1 to 12-3; 3) assault and battery claims against the State and Troopers Kenyon and Hogan individually; and 4) negligence claims against the State and Troopers Kenyon and Hogan individually.

Defendants moved for summary judgment on the Plaintiff's state and federal constitutional claims against the State and the troopers in their official capacities. Defendants also moved for summary judgment as to the state and federal constitutional claims against the troopers in their personal capacities. Lastly, Defendants moved for summary judgment on the common law tort claims against the troopers in their personal capacities.[3]

*1.     Federal and State Constitutional Claims Against the State and Troopers Kenyon and Hogan in their Official Capacities: Eleventh Amendment Immunity*

Defendants argue that Plaintiff's state and federal constitutional claims against the State and Troopers Kenyon and Hogan in their official capacities are barred by the Eleventh Amendment doctrine of state sovereign immunity. The Court agrees.

The Eleventh Amendment to the United States Constitution provides that . . . .

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

[3] Defendants also moved for summary judgment on damages as to the tort claims. However, because Plaintiff voluntarily abandoned his claims for pain and suffering under the New Jersey Tort Claims Act in his opposition brief, the Court finds it unnecessary to consider Defendants' damages arguments.

Although the Eleventh Amendment only expressly bars federal courts from hearing suits brought against states by citizens of another state or by citizens or subjects of a foreign state, it is well established that the doctrine of sovereign immunity also bars a suit brought by a citizen against his or her own state.  See Alden v. Maine, 527 U.S. 706, 712-13 (1999) (describing the phrase "Eleventh Amendment immunity" as "something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment).

A state's immunity from suit under the Eleventh Amendment extends to an agency or department of the state, and to a state official if he or she is sued in his or her official capacity, wherever the state is the "real party in interest;" that is, whenever "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102 (1984) ("Pennhurst II") (citing Dugan v. Rank, 372 U.S. 609, 610 (1963)); see also Kentucky v. Graham, 473 U.S. 159, 167 (1985) (noting that "official capacity suits 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'") (internal citation omitted).

Only two exceptions to Eleventh Amendment immunity have been recognized by the Supreme Court: waiver of immunity by the state,  and abrogation of immunity by Congress. Alden, supra, 527 U.S. at 755-56; Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Ex parte New York, 256 U.S. 490, 497 (1921); Welch v. Texas Dep't of Highways & Public Transp., 483 U.S. 468, 487 (1987).  Section 1983 does not represent an abrogation of a State's immunity.  Quern v. Jordan, 440 U.S. 332, 350 (1979).

Plaintiff argues that, as a threshold matter, Defendants have failed to establish that the Division of State Police is a state entity entitled to immunity under Eleventh Amendment analysis. The Court rejects this argument. It is obvious that the Division of State Police is a state entity capable of asserting the sovereign immunity defense. See N.J.S.A. § 52:17B-1; N.J.S.A. § 52:17B-3.

Next, Plaintiff argues that Defendants have waived any claim to sovereign immunity "through extensive participation in this litigation" and by "vigorously defending the case on the merits." (Pl.'s Br. at 44) "A state can waive an Eleventh Amendment immunity defense through a voluntary appearance in litigation against it in federal court." College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 131 F.3d 353, 365 (3d Cir.1997) aff'd, 527 U.S. 666 (1999). However, the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Id. at 675. Generally, waiver of sovereign immunity through litigation conduct only happens when the state "voluntarily invokes" federal court jurisdiction. See id. (citing Gunter v. Atlantic C. L. R. Co., 200 U.S. 273, 284 (1906) (stating that "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment")).

In arguing that Defendants have waived sovereign immunity through their conduct in this litigation, Plaintiff points to a number of actions taken by Defendants to respond to this lawsuit and participate in discovery. None of this conduct rises to the level of voluntarily invoking the jurisdiction of this Court. Although sovereign immunity may be waived when a state removes a suit to federal court, Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 619

9

(2002), that rule has no bearing upon this case; it was Plaintiff who chose to litigate in federal court, not Defendants. The Court is also unpersuaded by Plaintiff's argument that past conduct by the State *in other cases* indicates a "preference for litigating in federal court claims regarding the excessive use of force" (Pl.'s Supp. Br. at 3) that is sufficient to waive sovereign immunity *in this case*. As Defendants correctly point out, Plaintiff cites to no case supporting the proposition that a state can waive its sovereign immunity by either the weight or frequency of its past filings to remove other arguably similar matters from state to federal court.

For the foregoing reasons, all of Plaintiff's state and federal constitutional claims against the State and Troopers Kenyon and Hogan in their official capacities are barred by the Eleventh Amendment.

Plaintiff's constitutional claims also fail because the state entities are not amenable to suit under either Section 1983 or the NJCRA. Section § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To be liable within the meaning of the statute, the defendant in a Section 1983 action must be a "person," and a state is not a "person" within the meaning of Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) (holding that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). Accordingly, a state official acting in his or her official capacity is not a person that can be sued

within the meaning of Section 1983.  Id. at 7.  Similarly, under the NJCRA, only "a *person* acting under color of law," is a proper defendant.  N.J.S.A. § 10:6-2(c).  Although the NJCRA does not define the word "person," the New Jersey Code has set a default definition for that word:

> Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them. . . . The word "person" includes corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals . . . and, when used to designate the owner of property which may be the subject of an offense, includes this State, the United States, any other State of the United States as defined infra and any foreign country or government lawfully owning or possessing property within this State.

N.J.S.A. § 1:1-2.  In other words, under its own laws, the State of New Jersey generally only qualifies as a "person" in the limited circumstance of property crimes.  As such, the Division of State Police is not a "person" amenable to suit under the NJCRA.  Didiano v. Balicki, No. 11-2380, 2012 U.S. App. LEXIS 14624 (3d Cir. July 17, 2012).

> 2.   *Federal and State Constitutional Claims Against Troopers Kenyon and Hogan in their Personal Capacities:  Qualified Immunity*

Defendants move for summary judgment as to Plaintiff's federal and state constitutional claims against Troopers Kenyon and Hogan in their personal capacities on the basis of qualified immunity.

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  Anderson v. Creighton, 483 U.S.

11

635, 638 (1987). In <u>Saucier v. Katz</u>, the U.S. Supreme Court explained that "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct . . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." 533 U.S. 194, 205 (2001).

A court conducting a qualified immunity analysis in a Section 1983 action must apply a two-pronged analysis. <u>Id.</u> at 201. The court must first consider whether, taking the facts in the light most favorable to the party asserting the injury, the facts demonstrate that the conduct of the state actor defendant violated a constitutional right. <u>Id.</u> Once a defendant asserts the qualified immunity defense, it is the plaintiff who bears the initial burden of demonstrating the violation, even when the defendant raises qualified immunity on a motion for summary judgment. <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997). The Third Circuit has held that "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end." <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2002). If the facts do make out a constitutional violation, then the court proceeds to the second step of the inquiry, which asks whether the right was clearly established. <u>Saucier</u>, 533 U.S. at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson</u>, 483 U.S. at 640. If the right was not clearly established, the state actor is entitled to qualified immunity. <u>Saucier</u>, 533 U.S. at 202.

The standards governing qualified immunity in the context of Section 1983 will also determine whether Plaintiff's state constitutional claims against the troopers will be barred. The New Jersey Appellate Division has recently held that claims brought under the NJCRA are subject to the traditional qualified immunity defense. See <u>Ramos v. Flowers</u>, No. A-4910-10T3,

12

2012 N.J. Super. LEXIS 157, *14 (App. Div. Sept. 21, 2012) (holding "that the Legislature anticipated that New Jersey courts would apply the well-established law concerning the affirmative defense of qualified immunity in adjudicating damage claims under the [NJCRA]"). Although the Third Circuit has yet to weigh in on the subject, other district courts have either held or assumed that claims brought under the NJCRA may be subject to a qualified immunity defense. See Williams v. State Div. of State Police, No. 10-3478, 2012 U.S. Dist. LEXIS 72457 (D.N.J. May 24, 2012) (finding that "the defense of qualified immunity is appropriate to claims arising under the NJCRA, based on the history of NJCRA and the Court's prior decisions applying the defense as an extension of a Section 1983 analysis."). This Court follows suit.

Plaintiff alleges that Troopers Kenyon and Hogan used excessive force in arresting him, in violation of Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution and in violation of Article I, paragraphs one and seven of the New Jersey State Constitution. The U.S. Supreme Court has held that Section 1983 claims for excessive force arising "in the context of an arrest or investigatory stop of a free citizen" are most properly analyzed under the Fourth Amendment's guarantee that individuals be free from "unreasonable searches and seizures." Graham v. Connor, 490 U.S. 386, 394 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must demonstrate that, under the totality of the circumstances, the officer's actions were not objectively reasonable in light of the facts and circumstances confronting the officer. Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). In assessing reasonableness, a court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

evade arrest by flight." Kopec v. Tate, 361 F.3d 772, 776-77 (3d Cir. 2004) (citing Graham, 490 U.S. at 396).  A court might also take into account "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. at 777 (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

Although the New Jersey Constitution has been held to provide greater protections from unreasonable searches and seizures in certain contexts, those contexts have been specifically delineated by the New Jersey Supreme Court, and this Court "sees no reason to conclude that in the context of a claim for excessive force during an arrest, the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution." Norcross v. Town of Hammonton, No. 04-2536, 2008 U.S. Dist. LEXIS 9067 (D.N.J. Feb. 5, 2008).  See also Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000) (granting defendants summary judgment on New Jersey constitutional claim on grounds that defendants had prevailed under Fourth Amendment analysis) (citing Desilets v. Clearview Regional Bd. of Educ., 265 N.J. Super. 370 (App. Div. 1993)).

With regard to Trooper Kenyon, the Court holds that neither the federal nor state claims are defeated by the defense of qualified immunity.  Affording Plaintiff every favorable inference, the Court finds that a reasonable trier of fact could conclude that the conduct of Trooper Kenyon was in violation of clearly established constitutional rights of which he must have had knowledge.  See Saucier, 533 U.S. at 201.  Plaintiff alleges that Trooper Kenyon was repeatedly warned that Plaintiff had an injured left hand and that during the seizure, Trooper Kenyon

specifically targeted Plaintiff's injured hand with the intention of causing Plaintiff pain or injury. (Sussino Dep. at 116:13-19; 121:6-17) Plaintiff alleges that Trooper Kenyon reached his left hand into Plaintiff's truck, interlocked with the Plaintiff's injured thumb, and bent the thumb back until it touched the Plaintiff's forearm. (Sussino Dep. at 70:24-71:3; 118:11-15) The crime for which Plaintiff was arrested, Obstructing the Administration of Law, § 2C:29-1, was not a severe one. By Trooper Kenyon's own admission, prior to the alleged excessive use of force, Officer Kenyon had confirmed that there was nothing in Plaintiff's vehicle that could be used as a weapon. (Kenyon Dep. at 73:1-3) Additionally, although Plaintiff was resisting arrest, Trooper Hogan testified that his resistance was only "minimal." (Hogan Dep. at 62:20-23) Trooper Kenyon also testified that he did not consider Plaintiff a flight risk. (Kenyon Dep. at 81:11-13) In light of the above, a trier of fact could conclude that under the totality of the circumstances, Trooper Kenyon's conduct was not objectively reasonable in light of the facts and circumstances confronting him and that his actions consequently violated the Plaintiff's clearly established constitutional rights. Accordingly, the Court will deny Defendants' motion for summary judgment as to the state and federal constitutional claims against Trooper Kenyon on the basis that he is not entitled to qualified immunity.

The Court finds that Trooper Hogan, however, is entitled to qualified immunity. Plaintiff made clear in his own deposition that Trooper Hogan engaged in no conduct that could support the allegations in Plaintiff's complaint. (Sussino Dep. at 156:22-157:3) As discussed already, Plaintiff alleges that it was Trooper Kenyon who targeted Plaintiff's injured thumb in removing him from his vehicle. (Sussino Dep. at 116:13-19; 121:6-17) Plaintiff has also repeatedly stated that it was Trooper Kenyon – not Trooper Hogan – who handcuffed him. (Sussino Dep. at 71:4-

8; 126:4-7; 134:1-3) According to Plaintiff, Trooper Hogan only touched him once, on Plaintiff's right bicep, in order to aid Trooper Kenyon in removing Plaintiff from his vehicle. (Sussino Dep. at 155:19-23; 156:19-21) Indeed, by Plaintiff's own admission, "Hogan was a very professional trooper . . . ." (Sussino Dep. at 155:23)

Given the Plaintiff's own testimony, it is unclear why Trooper Hogan was named as a defendant in this case to begin with. The Court finds that none of Trooper Hogan's alleged conduct violated Plaintiff's rights under either the U.S. Constitution or the Constitution of the State of New Jersey and that he is therefore entitled to qualified immunity and summary judgment.

        3.      *State Common Law Tort Claims: "Good Faith" Immunity*

Defendants move for summary judgment as to Plaintiff's common law tort claims against Troopers Kenyon and Hogan in their personal capacities on the basis of "good faith" immunity under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. §§ 59:1-1 to 12-3.

The NJTCA provides that "[a] public employee is not liable if he acts in good faith in the execution of enforcement of any law." N.J.S.A. § 59:3-3. New Jersey courts have consistently likened the "good faith" immunity provision of the NJTCA to the qualified immunity standard familiar to the Section 1983 context. See Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000) ("[t]he same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act."); Gurski v. New Jersey State Police Dept., 242 N.J. Super. 148, 158 (App. Div. 1990).

Applying the same standard that governed the Court's determination of the troopers' entitlement to qualified immunity from Plaintiff's state and federal constitutional claims, the Court holds that Trooper Hogan is entitled to "good faith" immunity under the NJTCA, while Trooper Kenyon is not.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment in part and deny it in part. An appropriate form of order will be filed together with this Opinion.

                                                            s/ Stanley R. Chesler

                                                   STANLEY R. CHESLER

                                                   United States District Judge

DATED: October 18, 2012